# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| LANA WEINBACH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:16CV783JCH |
| | ) |
| STARWOOD HOTELS AND RESORTS WORLDWIDE, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the court pursuant to Defendant Starwood Resorts Worldwide, Inc.'s Motion for Judgment on the Pleadings as to Plaintiff's Negligence per se Claim in Plaintiff's Petition (Motion for Judgment on the Pleadings). (ECF 25). The matter is fully briefed and ready for disposition.

### BACKGROUND

Defendant Starwood Hotels and Resorts Worldwide, Inc., (Starwood) removed this matter from the Circuit Court of the County of St. Louis, Missouri, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

As relevant to the pending Motion, the allegations of Plaintiff Lana Weinbach's Complaint are as follows. Plaintiff is the daughter of Ben and Sarah Weinbach. Sarah Weinbach died in 1977, and Ben Weinbach died in 2009. Plaintiff lived at 8720 West Kingsbury Avenue, St. Louis, Missouri, with both of her parents prior to their deaths, and continued to live there through the date the Complaint was filed. During their lives, Ben and Sarah Weinbach purchased shares of stock in ITT Corporation, which, after a merger, became shares of stock in

Starwood (the Starwood Shares). Ben and Sarah Weinbach purchased the Starwood Shares jointly with Plaintiff. Upon her father's death, Plaintiff became the sole owner of the Starwood Shares. (ECF 1.1, ¶¶ 9-14).

Specifically, Plaintiff alleges that, in 2003, Starwood reported the Starwood Shares as abandoned to the State Treasurer (the Treasurer), and that, prior to doing so, Starwood "unquestionably knew the whereabouts of" Plaintiff and Ben Weinbach, and failed to "send any communication of any type" to Plaintiff and Ben Weinbach regarding the Starwood Shares it deemed abandoned. Plaintiff also alleges that as a result of a 2006 transaction between Starwood and Host Hotels & Resorts, Inc., (Host), Plaintiff and Mr. Weinbach received shares in Host (the Host Shares); that, at the time the transaction between Starwood and Host took place, Plaintiff's and Mr. Weinbach's Starwood Shares were in the possession of the Treasurer; and that, therefore, the Host Shares belonging to Plaintiff and Mr. Weinbach were delivered to the Treasurer. Plaintiff also alleges that, in 2009, the Treasurer sold the Starwood Shares and the Host Shares, and that neither Starwood nor the Treasurer published or mailed to Plaintiff or Ben Weinbach notice prior to the Treasurer's doing so. (ECF 1.1, ¶¶ 15-42).

Plaintiff alleges that Starwood's conduct did not comply with the Missouri Uniform Disposition of Unclaimed Property Act (MDUPA), Mo. Rev. Stat. §§ 447.500-447.595, because "it did not make proper efforts to locate Ben Weinbach and [Plaintiff] and did not provide them proper notice that it deemed their Starwood Shares to be abandoned and transferred to the Treasurer." Plaintiff alleges that because Starwood did not comply with the MDUPA's notice requirements, it is not entitled to be relieved from liability under MDUPA § 447.545.1.[1] Finally,

---

[1] The Missouri Uniform Disposition of Unclaimed Property Act (MDUPA) § 447.545.1 provides: "Upon the payment or delivery of abandoned property, the state shall assume custody and shall be responsible for the safekeeping thereof. Any person who pays or delivers

2

Plaintiff alleges that Starwood did not comply with the delivery requirement of MDUPA § 447.545.4,[2] and is, therefore, not entitled to be relieved of liability under that statutory provision. (ECF 1.1, ¶¶ 45-47).

In Count I, Negligence Per Se, Plaintiff alleges that Starwood had obligations under MDUPA § 447.539.5,[3] MDUPA § 447.503(11) ("reasonable and necessary diligence" is consistent with "good business practice"; holders shall send notice regarding unclaimed property first class mail, postage prepaid, and marked "Address Correction Requested"), and the Missouri Code of State Regulations, 15 C.S.R. 50-3.070(3)(C) (requiring "[h]olders to exercise reasonable and necessary diligence as is consistent with good business practice in attempting to locate owners of abandoned property"), and that Starwood violated those obligations by "improperly presuming the Starwood Shares were abandoned, and transferring them to the Treasurer, and by

---

abandoned property pursuant to sections 447.500 to 447.595 is relieved of all liability for any claim which then exists or which thereafter may arise or be made in respect to the property."

[2] As relevant, MDUPA § 447.545.4 provides:

> The holder of any interest pursuant to section 447.520 evidenced only by the stock records or membership records of the business association may deliver a duplicate certificate to the treasurer. Upon such delivery, the holder . . . shall be relieved from all liability of every kind to the person acquiring the original certificate or the duplicate of such certificate issued to the treasurer, not to exceed the liquidated value of the property on the date of delivery, or if unliquidated, the market value of the property on the date of delivery.

[3] As relevant, MDUPA § 447.539.5 provides:

> If the holder of property presumed abandoned pursuant to sections 447.500 to 447.595 knows the whereabouts of the owner, if the owner's claim has not been barred by the statute of limitations, and the property involved is valued at fifty dollars or more, the holder shall, before filing the annual report, communicate with the owner and take necessary steps to prevent abandonment from being presumed. The holder shall exercise such reasonable and necessary diligence as is consistent with good business practice to ascertain the whereabouts of such owner of property valued at fifty dollars or more within one year prior to reporting the property to the state treasurer.

its failure to communicate with Ben Weinbach and [Plaintiff] regarding the Shares and their alleged abandonment." Plaintiff further alleges that as a result of Starwood's conduct she "would still possess [the] Starwood Shares and the Host Shares or would have been in a position to sell them at some previous time." (ECF 1.1, ¶¶ 48-57). In Count II, Plaintiff alleges Conversion. Only Count I is the subject of Defendant's Motion for Judgment on the Pleadings.

## JUDGMENT ON THE PLEADINGS STANDARD

The standard applicable to a motion for judgment on the pleadings is the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Ashley Cnty v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (citing *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990)). Rule 12(b)(6) "requires the court to 'accept as true all factual allegations set out in the complaint' and to 'construe the complaint in the light most favorable to the plaintiff[], drawing all inferences in [the plaintiff's] favor.'" *Ashley County*, 552 F.3d at 665 (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)). "'[W]ell-pleaded facts, not legal theories or conclusions, determine [the] adequacy of [t]he complaint.'" *Clemons v. Crawford*, 585 F.3d. 1119, 1124 (8th Cir. 2009) (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003) (internal citation omitted). "The facts alleged in the complaint 'must be enough to raise a right to relief above the speculative level.'" *Clemons*, 585 F.3d. at 1124 (quoting *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (internal citation omitted).

In a diversity case, such as the matter under consideration, a court must interpret the applicable state law "'in determining whether the elements of the [alleged] offenses have been pled.'" *Ashley County*, 552 F.3d at 665 (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1062 (8th Cir. 2005)).

4

**LEGAL FRAMEWORK FOR NEGLIGENCE PER SE**

While "negligence in a particular situation depends on whether or not a reasonably prudent person would have anticipated danger and provided against it," "[n]egligence per se arises where the legislature pronounces in a statute what the conduct of a reasonable person must be, whether or not the common law would require similar conduct." *Lowdermilk v. Vescovo Bldg. and Realty Co., Inc.*, 91 S.W.3d 617, 628 (Mo. Ct. App. 2002) (internal citations and quotation marks omitted). When the legislature has done so, "the court [] adopts the statutory standard of care to define the standard of conduct of the reasonable person." *Lowdermilk*, 91 S.W.3d at 628 (citing Restatement Torts (Second) §§ 286, 288 (1965)). "Negligence per se 'is a form of ordinary negligence that results from the violation of a statute.'" *Lowdermilk*, 91 S.W.3d at 628 (quoting 57A Am. Jur. 2d Negligence § 727 (1989)). Where negligence per se is applicable, "the jury is instructed on the statutory standard of care rather than the care of the reasonable person." *Lowdermilk*, 91 S.W.3d at 628 (citing *Egenreither v. Carter*, 23 S.W.3d 641, 643-45 (Mo. Ct. App. 2000)).

> The four requirements necessary to establish a claim for negligence per se are:
>
> 1) a violation of a statute or ordinance; 2) the injured party must be within the class of persons intended to be protected by the statute or ordinance; 3) the injury complained of must be of the nature that the statute or ordinance was designed to prevent; and 4) the violation of the statute or ordinance must be the proximate cause of the injury.

*Lowdermilk*, 91 S.W.3d at 628 (quoting *Bus. Men's Assur. Co. v. Graham*, 891 S.W.2d 438, 455 (Mo. Ct. App. 1994)).

Prior to determining whether there is a violation of a statute, a court must first determine whether the statute at issue is one "on which negligence per se may be premised." *Lowdermilk*, 91 S.W.3d at 628. Negligence per se "is ordinarily based" on "the class of safety statutes." *Id.*

"'Negligence per se is in effect a presumption that one who has violated a safety statute has violated his legal duty to use due care.'" *Id.* (quoting 57A Am. Jur. 2d Negligence § 727 (1989)). The doctrine of negligence per se "traditionally" arises in cases where personal injury and physical injury to property are involved. *Lowdermilk*, 91 S.W.3d at 628.

Upon determining whether the statute at issue may be the premise of negligence per se, a court must consider "legislative intent," and determine whether the statute was "intended to replace the standard of care in a negligence action." *Id.* at 629. In *Lowdermilk*, 91 S.W.2d at 628, the court stated that it was not aware of any Missouri case that "extended the negligence per se doctrine to cases which involve damage to economic interests."

The court also held, in *Lowdermilk*, 91 S.W.3d at 630, that where a statute fails to provide a basis for negligence per se, a court need not address whether any of the remaining requirements for negligence per se are satisfied. .

## DISCUSSION

In its Motion for Judgment on the Pleadings, Starwood contends that Plaintiff's negligence per se claim is not cognizable because the legislature did not expressly or implicitly intend "the MDUPA for use in a Private Cause of Action for Negligence per se." (ECF 25 at 3). Starwood also contends that Plaintiff's negligence per se is not cognizable because the MDUPA is not a safety statute. (ECF 25 at 5). Plaintiff argues that the MDUPA does create a private cause of action; that Missouri law does not limit a claim for negligence per se to safety statutes; and that, therefore, her claim of negligence per se is cognizable. (ECF 37).

Plaintiff's Complaint alleges the first element of a cause of action for negligence per se; she alleges that a statute, the MDUPA, has been violated. *See Clemons*, 585 F.3d. at 1124. The Court must, therefore, consider the legislative intent of the MDUPA, to determine whether the

6

MDUPA creates a private cause of action which replaces the common law standard of negligence. *See Lowdermilk*, 91 S.W.3d at 628.

A statute does not create a private cause of action unless it appears by "express terms or clear implication" to have been the legislative intent. *Imperial Premium Fin., Inc. v. Northland Ins. Co.*, 861 S.W.2d 596, 599 (Mo. Ct. App. 1993). Plaintiff has not suggested that the MDUPA *expressly* creates a private cause of action to replace the common law standard for negligence. Rather, relying on various provisions of the MDUPA, Plaintiff argues that the MDUPA impliedly creates such a cause of action. Under Missouri law, "[a] private right of action will not be implied [] when it does not promote or accomplish the primary goals of the statute." *Imperial Premium*, 861 S.W.2d at 599 (citing *Shqeir v. Equifax, Inc.*, 636 S.W.2d 944, 948 (Mo. 1962) (en banc)). As for a statute's implying a private cause of action, the Missouri Supreme Court holds that, "[t]he creation of a private right of action by implication is not favored, and the trend is away from judicial inferences that a statute's violation is personally actionable." *Shqeir*, 636 S.W.2d at 947.

In regard to the MDUPA's implying a private right of action for negligence per se, Plaintiff contends that, "[b]ecause the MDUPA defines the conduct of a reasonable person when surrendering the property of another to the State, the violation of such conduct, as alleged [by Plaintiff], gives rise to a claim for negligence per se." Plaintiff also argues that the immunity provided by MDUPA § 447.545.1 for "holders who properly transfer property pursuant to the Act further supports the conclusion that it may serve a basis for negligence per se." (ECF 37 at 4).

Indeed, MDUPA § 447.545.1 provides immunity to any person who pays or delivers abandoned property pursuant to MDUPA §§ 447.500 to 447.595 and relieves such persons "of

7

all liability for any claim" made in respect to the property. *See* n.1. Also, a standard of care requiring "reasonable and necessary diligence" is established by MDUPA § 447.539.5. *See* n.3. The statutory scheme of the MDUPA, however, also provides a means of enforcement. The Treasurer "may impose a penalty . . . of up to twenty percent of the value of the property returned to the owner by the [T]reasurer" when "the person holding the property presumed abandoned failed to exercise such reasonable and necessary diligence as is consistent with good business practices." MDUPA § 447.539.7

Although Plaintiff argues that the statutory immunity provided by the MDUPA creates a private cause of action, the Missouri Supreme Court's decision in *Shqeir*, 636 S.W.2d at 948, establishes otherwise. While the private cause of action at issue in *Shqeir* was not one for negligence per se, the Missouri Supreme Court unequivocally held that, "[w]hen the Legislature has established other means of enforcement, [Missouri does] not recognize a private civil action unless such appears by clear implication to have been the legislative intent." *Id.* The MDUPA does provide "other means of enforcement" and does not provide "by clear implication" that it was intended to create a private right of action.

Plaintiff contends that the "mere fact that a statute [such as the MDUPA] does not explicitly or implicitly create a private right of action does not preclude a claim for negligence per se where the statute establishes the standard of care by which [to] determine a defendant's negligence." (ECF 37 at 5). In support of this argument, Plaintiff cites *I.S. v. Washington University*, 2011 WL 2433585 (E.D. Mo. June 14, 2011) (unreported). Plaintiff's reliance on that case is misplaced, however, as the issue *decided* in *Washington University*, 2011 WL 2433585, at *1-5, was whether the matter should be remanded to the state court; the defendant had removed the matter based on federal subject matter jurisdiction; the plaintiff's state

8

complaint alleged negligence per se regarding the defendant's disclosure of his medical condition; and the removing defendant asserted that the negligence per se claim was a "thinly-disguised attempt to bring a private cause of action for violation of the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. §§ 1320d, et. al." Acknowledging that HIPAA was implicated in the plaintiff's negligence per se claim, the court rejected the defendant's argument, declined to exercise supplemental jurisdiction, and remanded the case to state court. *Id.* at *5.

The defendant in *Washington University* had also filed a motion to dismiss the plaintiff's negligence per se claim, on the basis that the court did not have subject matter jurisdiction. There was no dispute that HIPPA did not expressly or implicitly create a private negligence per se cause of action. *Washington University*, 2011 WL 2433585, at *1 ("There is no dispute that HIPAA does not create a private cause of action, either via § 1983 or through an implied right of action." "Furthermore, there is no express provision establishing a private cause of action, or any clear implication of Missouri legislative intent to recognize a private cause of action in Missouri statutes regarding patients' rights.") (internal citations omitted). The plaintiff contended that he was "only referencing HIPAA in order to establish the standard of care by which to adjudge whether defendant's acts were negligent." *Washington University*, 2011 WL 2433585, at *2. The court, in *Washington University,* 2011 WL 2433585, at *2, held that the complaint "*may* stand as a state claim for negligence per se despite its exclusive reliance upon HIPAA," but it did not reach the merits of the plaintiff's negligence per se claim or the defendant's motion to dismiss because it remanded the matter. The court's decision only held that the claim for negligence per se did "not raise any compelling federal interest nor [was] a substantial federal question presented." Although HIPAA [was] clearly implicated in the claim

9

for negligence per se, said claim [fell] within that broad class of state law claims based on federal regulations in the state court." *Washington University,* 2011 WL 2433585, at *5 (internal quotation and citation omitted). As such, the Court finds that *Washington University*, 2011 WL 2433585, does not support Plaintiff's argument that a statute does not preclude an action for negligence per se, even though it does not explicitly or implicitly create such a right, if the statute establishes a standard of care.

In regard to Plaintiff's argument that negligence per se need not be based on a safety statute, as stated above, negligence per se is "ordinarily" based on safety statutes. *Lowdermilk*, 91 S.W.3d at 628. The MDUPA is not a safety statute, as it does not address personal injury or physical injury to property; it addresses economic interests. *See id*. In *Lowdermilk*, the court noted that the plaintiff failed to provide authority to extend the "negligence per se doctrine to cases which involve damage to economic interests." 91 S.W.3d at 628. Plaintiff in the matter under consideration, likewise, has failed to provide such authority to the Court. Notably, in *Lowdermilk*, in the context of Missouri's regulation of Real Estate Agents and Brokers, Mo. Rev. Stat. §§ 339.710 et seq., the court considered, that Missouri cases have held that conduct "which constitutes untrustworthy or improper fraudulent or dishonest dealing or demonstrates bad faith or gross incompetence," is not a basis for negligence per se. 91 S.W.3d at 629 (citing *American Mortg. Inv. Co. v. Hardin-Stockton*, 671 S.W.2d 283, 294-95 (Mo. Ct. App. 1984)). *See also Bus. Men's Assurance*, 891 S.W.2d at 455-56 (Missouri statute regulating the practices of construction professionals does not create a private cause of action for negligence per se because the statute's overall purpose was to protect persons who hire architects, engineers, or surveyors); *Imperial Premium Fin. Co. v. Northland Ins. Co.*, 861 S.W.2d 596 (Mo Ct. App. 1993) (Missouri statute imposing criminal penalties on insurance companies for failure to return unearned

premiums did not create a private negligence per se cause of action).

In conclusion, the Court finds that the MDUPA does not create a private cause of action for negligence per se, and that, therefore, the Court need not address whether any of the remaining requirements for negligence per se are satisfied. *Lowdermilk*, 91 S.W.3d at 630. Accepting as true all factual allegations of Plaintiff's Complaint, construing the Complaint in the light most favorable to Plaintiff, and drawing all inferences in Plaintiff's favor, the Court further finds that Plaintiff has failed to sufficiently plead a cause of action for negligence per se, and that, therefore, Starwood's Motion for Judgment on the Pleadings should be granted. *Clemons*, 585 F.3d. at 1124; *Ashley County*, 552 F.3d at 665; *Lowdermilk*, 91 S.W.3d at 628-30.

## CONCLUSION

For the reasons stated above, the Court finds that Starwood's Motion for Judgment on the Pleadings should be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Starwood Hotels and Resorts Worldwide, Inc.'s Motion for Judgment on the Pleadings as to Plaintiff's Negligence per se Claim in Plaintiff's Petition (ECF 25) is **GRANTED**; and

**IT IS FURTHER ORDERED** that Count I of Plaintiff's Complaint is **DISMISSED**. Dated this 23rd Day of August 2017.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE